Curia, per Harper, Ch.
I have examined this case with all the attention in my power, and though not without some degree of doubt and hesitation, have come to the conclusion that the decree ought to be affirmed. There is some difficulty in reconciling the various cases on the subject. In the case of Lowfield vs. Stoneham, cited from 2 Strange, 1261, it seems to be taken for granted that if there be a devise to A, and in case of his death to B, this imports if A shall die without issue, in the life-time of the testator; and by parity of reason, indeed, in stronger reason — if it were to A, for life, at his death to B, and in case of B’s death to C, this must mean if B shall die in the life-time of the tenant for life. In Billings vs. Sandom, 1 Br. C. C. 393; Nowland vs. Nelligan, id. 488, and Douglass vs. Chalmer, 2 Ves. jr. 501, where the devise was to one, indefinitely, and in case of his death to another, this means his death at whatever time, and the limitation over is good. It struck me, at first, that these decisions rested on the effect of the words alone, without any qualification from circumstances. In Billings vs. Sandom, however, the bequest was £1000, to the defendant’s sister, to whom the testator gave the residue of his estate, to be disposed of as she shall think proper; and in Douglass vs. Chalmer, where the bequest was to the testatrix’s daughter, and in case of her death, to the children, equally to be divided, it appeared that the daughter was married to a husband who had children by a former marriage, and the effect of giving to the daughter, absolutely, would have been to vest the whole in the husband, and defeat the intention expressed in favor of the daughter’s own children; and in Cambridge vs. Rous, 8 Ves. 12, where Sir William Grant expresses the opinion that the bequest to one, indefinitely, *411 and in case of his death, to another, these words standing alone, import death in the life-time of the testator ; he sajs, that “in Billings vs. Sandom, the mode of giving the residue, contrasted with the mode of giving the particular legacy, afforded evidence that the one was given absolutely, and only a limited interest in the other;” and that in Douglass vs. Chalmer, “Lord Roslyn thought that from the whole will, he was able to collect an intention in favor of the children.” In that case, (Cambridge vs. Rous,) the bequest was to two sisters, and in case of the death of either, to devolve on the other. They were held to take an absolute estate, on the absurdity which would follow, that otherwise, if they left children, the property would be given away from their children. Similar was the decision in Hinckley vs. Simmons, 4 Ves. 160, though it was a hard case, and defeating an intention in the highest degree probable. In Turner vs. Moore, 6 Ves. 557, quoted by the Chancellor, there were circumstances on the face of the will, to put it out of doubt, that death in the lifetime of the tenant was- meant. In Smart vs. Clark, 3 Cond. Eng. Ch. Rep. 437, the estate was given expressly for life, and the construction was upon the whole will. But all these cases do not touch the present. The cases, certainly, which come the nearest the present, are those of Galland vs. Leonard, 1 Swanst. 161, cited by the Chancellor, and DaCosta vs. Keir, 3 Cond. Eng. Ch. Rep. 435. The former of these cases was decided on the repugnancy of the bequest to the daughters, “for their own use and benefit absolutely,” with the bequest to their children in case of their death, leaving children, which would only be reconciled by the construction — if the daughters should die without issue during the life-time of the previous tenant for life.
The direction of the trustees to vest until the children should attain twenty-one, has no effect on the decision. So in DaCosta vs. Keir, the legacy was to Catharine Da-Costa, “for her own use and benefit, to be at her own disposal but, in case she should die, leaving children, to be equally divided between the children. There was, in that case, the further circumstance, that if the legatees over should die in the life-time of the wife, the wife was to take, absolutely. But the Master of the Rolls seems to have *412 been clear, independently of this. So in the case before us. After a life estate to another, the testator gives to James Felix Vidal the whole of his estate, both real and personal. These words, though sometimes regarded only as descriptive of the subject matter of the gift, are commonly and appropriately used to signify the quantity of the estate; that it is absolute. They are not, perhaps, so strong as the words in Galland vs. Leonard, “to her use and benefit, absolutely but there are circumstances to strengthen them. The gift to James Felix Vidal is after a previous life estate. Where the testator intends a life estate, he expresses it distinctly. The whole form and order of expres-. sion are different from what they would have been, if the testator had intended a remainder to children who, next to, parents, must have been the principal objects of his care, The natural order of expression would have been, “to James Felix Vidal, for life, or at least, indefinitely; and, at his death, to his children; but if he should die, leaving up children, or if his children should die,” &c. I do not doubt but that in truth, and in fact, the testator did intend ap absolute estate to his nephew. Then, according to the cases quoted, this can only be rendered consistent with the direction to divide the estate among his children at his death, by restricting the death to the life-time of the ten-, ant for life. The limitation over, in the event of all the children dying without children, is a void and very unu~. sual limitation. ' We should rather give such construction as to render a will operative, than to defeat it; and by sup-, posing it to mean, if they should die without children in the life-time of the tenant for life, the disposition is render-! ed valid and sensible. If we suppose an absolute estate to his nephew, it is not possible to imagine a reason for the limitation over, in this event, of the children’s dying without children. On the construction contended for, if James Felix Vidal had died in the life-time of the widow, leaving children, and those children had died before the limitation of' the life estate, the devise to the other nephews and nieces must have failed, though on the happen-^ ing of the event Vidal were dead without children.
The case of Nowlan vs. Nelligan, has no application to. the present, though the devise was of the whole repj apd, *413 personal estate. There was no limitation over, on the event of the daughter’s death. The testator expresses his confidence that his wife will see his daughter comfortably-provided for out of the property, so that it was impossible to understand the words “in case of death happening to my said wife,” to mean death in the testator’s life-time. Nothing would be plainer than that the testator did not intend to leave his daughters entirely unprovided for. Sir William Grant, in Cambridge vs. Rous, says, in reference to this case, “it was evident that some benefit was intended for the daughter, but it was doubtful, as the interest was not clearly expressed, whether it could be made effectual by imposing a trust upon the will. Some benefit, however, was evidently intended for the daughter, and none could be assured to her except by limiting her mother to an interest for life.” The decree is affirmed.
Johnson and J)unkiiv, Chancellors, concurred.